## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

CORE DISTRIBUTION, INC.,

        Plaintiffs,

v.

JOHN DOE 1, d/b/a Yaheetech under Seller
ID 20522203305 on Amazon.com et al.,

        Defendants.

Case No. 16-cv-04059 (SRN/HB)

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER FOR DEFAULT JUDGMENT AND PERMANENT INJUNCTION

The above entitled matter came before the undersigned on Plaintiff Core Distribution, Inc.'s Motion for Default Judgment [Doc. No. 145] against numerous defendants. Core seeks a permanent injunction, damages, attorneys' fees, pre-judgment interest, and costs. The Court, having carefully reviewed Core's motion and all of the files, pleadings and proceedings herein, makes the following findings of fact, conclusions of law and order for judgment.

### FINDINGS OF FACT

### I. BACKGROUND.

#### A. The Lawsuit and Parties

1. This is an action for patent infringement arising under the patent laws of the United States, including 35 U.S.C. §§ 271 and 281-285, false advertising under the

Lanham Act, 15 U.S.C. § 1125(a), false advertising and deceptive trade practices under Minnesota law, and common law unfair competition.

2.     The Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1331, 1338(a), and 1367(a).

3.     The Court has personal jurisdiction over the Defaulting Defendants because they do business in Minnesota and have committed acts of infringement and false advertising in the State of Minnesota.

4.     Venue is proper in this Court under 28 U.S.C. §§ 1391(b) and (c) because, the Defaulting Defendants are subject to personal jurisdiction in this judicial district and have committed acts of infringement and false advertising in this district.  None of the Defaulting Defendants have challenged that venue is appropriate and have thereby waived any such defense.

5.     Core is a Minnesota corporation with its principal place of business at 113 Washington Avenue North, Minneapolis, Minnesota 55401.

6.     Defendants JOHN DOE 3, d/b/a ladderpro under Seller ID 40454813405 on Amazon.com ("ladderpro"); JOHN DOE 4, d/b/a Honey-Blue Super Outlet under Seller ID 1779413921 on Amazon.com ("Honey-Blue"); JOHN DOE 6, d/b/a toolspro1 under Seller ID 1956866391 on Amazon.com ("toolspro1"); JOHN DOE 7, d/b/a Abundant Store under Seller ID 20571230605 on Amazon.com ("Abundant Store"); JOHN DOE 8, d/b/a go2buy under Seller ID 14512726805 on Amazon.com ("go2buy"); JOHN DOE 11, d/b/a Easyfashion under Seller ID 7164409515 on Amazon.com ("Easyfashion"); and JOHN DOE 12, d/b/a Wow Direct under Seller ID 19755247805 on Amazon.com ("Wow

Direct"), (collectively the "Defaulting Defendants") have done business under the respective names and Amazon.com ("Amazon") Seller ID numbers identified above.

**B.      Core's Patent**

7.      Core owns several patents relating to its telescoping ladders, including United States Patent No. 7,048,094, entitled "Extending Ladder and Associated Manufacturing Methods" (the "'094 patent").  (*See* Dkt. No. 1-5.)

8.      Core marks the packaging for its telescoping ladders with the '094 patent number.  (*See* Dkt No. 148 ¶ 5.)

**C.      The Defaulting Defendants' Sales**

9.      Each Defaulting Defendant, except go2buy, sold the telescoping ladder identified by Amazon ASIN 9996981126 ("Infringing Ladder 1"):



(*See* Compl. ¶¶ 16, 36, 40, 48, 52, 68, 72.)  Infringing Ladder 1 has a product title "12.5'

Aluminum Telescopic/Telescoping Loft Ladder Extension Extendable Portable by

Generic" on Amazon.  (*Id.* ¶ 16.)  At one time, Infringing Ladder 1 was identified by

Amazon as the "#1 Best Seller" in the telescoping ladders category on Amazon:



10.     Infringing Ladder 1 was advertised as having a maximum capacity of 330

lbs.  (*Id.* ¶ 17.)  The Infringing Ladder 1 purchased by Core included a label identifying it

as meeting the EN-131 standards.  (*Id.* ¶ 18.)  These standards require a load rating of 150

kg, which is approximately 330 lbs.  (*Id.*)

11.     The representations for the maximum capacity and accompanying standard

for Infringing Ladder 1 are likely to influence buying decisions by misleading customers

to believe that it (1) meets the EN-131 standards; (2) is capable of safely supporting 330

lbs.; and (3) is as safe as Core's products.  (*Id.* ¶ 19.)

12.     Numerous product reviews on Amazon.com for Infringing Ladder 1 provided that the ladder was unsafe and not able to safely support a 330 lbs. load.  (*Id.* ¶ 20.)

13.     Defendant go2buy sold a ladder similar to Infringing Ladder 1 identified by Amazon ASIN B00W6YFJ1S ("Infringing Ladder 2").  (*Id.* ¶¶ 21, 56.)

14.     Infringing Ladder 2 was also advertised as having a maximum load of 330 lbs.  (*Id.* ¶ 22.)  The Infringing Ladder 2 purchased by Core included a label identifying it as meeting the EN-131 standards.  (*Id.* ¶ 23.)

15.     The representations for the maximum capacity and accompanying standard for Infringing Ladder 2 are likely to influence buying decisions by misleading customers to believe that it (1) meets the EN-131 standards; (2) is capable of safely supporting 330 lbs.; and (3) is as safe as Core's products.  (*Id.* ¶ 24.)

16.     Infringing Ladder 2 is unable to safely support a load of 330 lbs.  (*Id.* ¶ 25; *see also* Dkt. No. 148 ¶ 12.)

17.     Each of the Defaulting Defendants has sold additional telescoping ladders that are substantially similar to, and for purposes of the Court's analysis have no colorable differences from either Infringing Ladder 1 or 2 sold by each Defendant.  (*Id.* ¶¶ 37, 41, 45, 49, 53, 57, 69, 73.)

18.     Pursuant to subpoenas sent to Amazon, Core has provided detailed evidence of the Defaulting Defendants' sales of telescoping ladders.  (*See* Dkt. Nos. 150-157.)  The data shows that the Defaulting Defendants have sold at least the following number of telescoping ladders:

| Defendant | Number of Ladders | Sales Revenue |
|---|---|---|
| ladderpro | 4,602 | $398,001.91 |
| Honey Blue | 555 | $61,021.03 |
| Tools Pro | 521 | $54,638.57 |
| Abundant Store | 480 | $45,388.66 |
| go2buy | 526 | $43,328.08 |
| Easyfashion | 272 | $23,677.80 |
| Wow Direct | 209 | $22,970.14 |

19.    Since the Defaulting Defendants have refused to participate in this proceeding, and have not provided any discovery, it is possible that the sales numbers of telescoping ladders is higher than the numbers included herein.  It is also possible that the Defaulting Defendants sold additional telescoping ladders under the same or different account names or through third-party sellers or platforms.

**D.    Service on Defaulting Defendants**

20.    Core served its Complaint on ladderpro on February 22, 2017.  (Dkt. No. 78 ¶ 3.)  Accordingly, ladderpro's deadline to respond to the Complaint was March 15, 2017.  To date, ladderpro has not answered or otherwise responded to the Complaint.

21.    Abundant Store responded to Core's request for waiver of service, agreed to accept service via U.S. Mail, and was served on February 21, 2017 at the location provided by Amazon and at which it agreed to be served at.  (*See* Dkt. No. 135 ¶ 3.)  Pursuant to a stipulation approved by the Court, Abundant Store's deadline to respond to the Complaint was March 20, 2017.  (*See* Dkt. No. 13 at 2.)  To date, Abundant Store has not answered or otherwise responded to the Complaint.

22. All of the remaining Defaulting Defendants were served through electronic means on April 3, 2017. (*See* Dkt. No. 78 ¶¶ 4-9.)[1] The deadline for those defendants to answer was April 24, 2017. To date, none of those Defendants have answered or responded to the Complaint.

23. When the Defaulting Defendants, except Abundant Store, failed to answer, Core filed an application for entry of default against them. (*See* Dkt. Nos. 77-78.) The application was served on all those defendants. (*See* Dkt. No. 79.) The Clerk of Court entered default against those Defendants on May 4, 2017. (*See* Dkt. No. 83.) Core eventually applied for an entry of default against Abundant Store, too. (*See* Dkt. No. 135-36.) Core served its application for an entry of default on Abundant Store. (*See* Dkt. No. 136.) The Clerk of Court entered default against Abundant Store on October 25, 2017. (*See* Dkt. No. 137.)

24. With the exception of the exhibits filed under seal, Core served its motion for default judgment and accompanying materials to the Defaulting Defendants on September 28, 2018. (*See* Dkt. No. 160.)

## CONCLUSIONS OF LAW

## I. THE DEFAULTING DEFENDANTS ARE IN DEFAULT.

1. Pursuant to Federal Rule of Civil Procedure 55, the Court may enter a default judgment against a defendant against whom a default has been entered for failing

---

[1] After diligently working to attempt to conventionally serve Honey-Blue, toolspro1, go2buy, Easyfashion, and Wow Direct, Core filed a motion to serve those defendants through electronic means. (*See* Dkt. Nos. 6-9.) Finding that service through electronic means was "reasonably calculated to give actual notice to these Defendants," the Court granted Core's motion. (*See* Dkt. No. 29 at 10.)

to plead or otherwise defend. "When a defendant is in default, the district court accepts as true all of the factual allegations in the complaint except those relating to the amount of damages." *AGCO Fin., LLC v. Littrell, No. 16-CV-4105 (WMW/FLN)*, 2017 WL 7369877, at *3 (D. Minn. Dec. 15, 2017).

2. Having been served with the summons and complaint in this action, and having failed to answer or otherwise respond to the Complaint, the Defaulting Defendants are in default. (*See* Dkt. Nos. 83 and 137.) Accordingly, the Court will enter judgment against the Defaulting Defendants as further provided below.

## II. LIABILITY

3. As noted above, factual allegations in the complaint, other than those relating to amount of damages, are to be accepted as true.

4. The Patent Act provides that anyone "without authority [who] makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." 35 U.S.C. § 271(a).

5. Based on the findings of facts above, and in particular Core's exemplary claim charts (*see* Dkt. Nos. 1-3 and 1-4), Core has shown that the Defaulting Defendants infringed at least claims 1-5 the '094 Patent through their sale of the products. Specifically, the Defaulting Defendants, except go2buy, infringed at least claims 1 through 5 of the '094 patent by "importing, manufacturing, using, selling, or offering to sell in the United States [Infringing] Ladder 1 and all substantially similar ladders identified for each Defendant." (*See* Compl. ¶¶ 81.) Further, go2buy infringed at least

claims 1 through 5 of the '094 patent by "importing, manufacturing, using, selling, or offering to sell in the United States [Infringing] Ladder 2" and other substantially similar ladders. (Compl. ¶¶ 57, 82.) The Court notes that because the Defaulting Defendants have refused to participate in the proceedings and provide relevant discovery, they may have sold additional products that infringe one or more of the '094 Patent claims.

6.     The Court also finds that the Defaulting Defendants' sales violated the Lanham Act.

7.     "To establish a claim for false advertising, a plaintiff must establish the following five elements: (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a loss of goodwill associated with its products." *See, e.g.*, *Select Comfort Corp. v. Tempur Sealy Int'l, Inc.*, 988 F. Supp. 2d 1047, 1052 (D. Minn. 2013).

8.     Based on the findings of facts above, and the allegations in the Complaint, the Court finds that the Defaulting Defendants engaged in false advertising in interstate commerce by making false and misleading representations on Amazon regarding each ladder's maximum load and satisfaction of the EN131 standard. The Court also finds that the Defaulting Defendants' statements were likely to deceive customers and influence

buying decisions, resulting in significant damage to Core. Thus, Core has proven its claims for false advertising under the Lanham Act against the Defaulting Defendants.

9.      The Court also finds that Core has proven the Defaulting Defendants violated the Minnesota Deceptive Trade Practices Act ("MDTPA").

10.      Under the MDPTA, "[a] person engages in a deceptive trade practice when, in the course of business, vocation, or occupation, the person" "represents that goods [ ] or services are of a particular standard . . . if they are of another" or "engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding." Minn. Stat. § 325D.44(7), (13). As found above, the Defaulting Defendants falsely represented to consumers that their ladders have a maximum load of 330 lbs. and meet the EN131 standard. Thus, Core has proven its claims against the Defaulting Defendants for violation of the MDTPA.

11.      The Court finds that the Defaulting Defendants are liable for patent infringement, false advertising, and deceptive trade practices.

## III.   INJUNCTIVE RELIEF

12.      Based on the findings of facts above, and the allegations in the Complaint, the Court finds that it is appropriate to enter a permanent injunction against the Defaulting Defendants their officers, agents, servants, directors, employees, affiliated entities, and those persons in active concert or participation with any of them from further infringing the '094 patent, false advertising, and deceptive trade practices.

13.      Under the Patent Act, the Court "may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such

terms as the court deems reasonable." 35 U.S.C. § 283. The Lanham Act also allows the Court "to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable." 15 U.S.C. § 1116. Likewise, under the MDTPA the Court may grant injunctions "under the principles of equity and on terms that the court considers reasonable." Minn. Stat. § 325D.45.

14.     To obtain a permanent injunction, a plaintiff must show:

(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *Ebay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

15.     This Court has previously issued a permanent injunction under very similar circumstances. *See Core Distrib. Inc. v. Xtreme Power (USA) Inc.*, Civ. No. 15-cv-1547 (DWF/BRT). The Court has also issued permanent injunctions against defaulting defendants in other patent cases and cases involving violations of the Lanham Act and the MDTPA. *See, e.g., J. Blazek*, 2007 WL 4191715, at *3; *Deluxe Corp. v. MIPS Dataline America, Inc.*, No. 99-cv-1975 (ADM/SRN), Dkt. No. 25 (D. Minn. Mar. 28, 2001). All four factors strongly support the issuance of an injunction in this case.

16.     The Defaulting Defendants' patent infringement has continued to cause Core irreparable harm by eroding the price for Core's ladders and undermining Core's ability to sell to retailers. The true damage that sales of cheap knockoff products caused to Core and the telescoping ladder market is immeasurable. Retailers have walked away from agreements to sell Core's products after observing knockoff products like the

Infringing Ladders selling at a fraction of Core's price.  (*See* Dkt. No. 148 ¶ 13.)  There is also evidence that purchasers have drawn the unfortunate and incorrect association between the design of telescoping ladders and the poor quality of the Defaulting Defendants' knockoff products.  (*See* Dkt. No. 1 ¶¶ 20, 25.)  It is impossible to determine how many potential customers have avoided purchasing Core's genuine, high-quality products based on negative impressions from the Defaulting Defendants' cheap and unsafe knockoffs.  Furthermore, losses of sales based on the Defaulting Defendants' cheap knockoffs will continue to decrease Core's market share and impact its ability to control the price and profitability of its patented product.

17.     With respect to Core's false advertising and deceptive trade practices claims, irreparable harm is presumed.  *See Medtox Scientific, Inc. v. Tamarac Medical, Inc.*, No. 06–3546 (JRT/FLN), 2007 WL 37793, at *4 (D. Minn. Jan. 4, 2007) ("Because Medtox has shown that it is likely to succeed on the merits of its Lanham Act claim, the Court presumes that Medtox has suffered irreparable harm as a result of Tamarac's false advertising."); *Country Inns & Suites by Carlson, Inc. v. 3AM, LLC*, No. 14-cv-03126 (MJD/FLN), 2014 WL 5431621, at *3 (D. Minn. Oct. 24, 2014) (applying presumption of irreparable harm to Lanham Act claims).  Furthermore, Core will be irreparably harmed if the Defaulting Defendants are allowed to continue to make false statements regarding the Infringing Ladders maximum load and certification with standard EN131 because customers will wrongly associate Core's high-quality products with the cheap, knockoff products.  Therefore, this factor heavily weighs in favor of an injunction.

18.     In considering the second factor, the Court also finds that legal remedies are inadequate in this case because Core has limited chances of recovering monetary damages against the Defaulting Defendants.  Furthermore, because the Defaulting Defendants have not appeared in this case or participated in discovery, Core was forced to calculate its damages based on the limited information available from Amazon.  Moreover, a mere royalty rate on Defaulting Defendants' sales at a much lower price than Core's genuine products does not come close to reflecting Core's damages for harm caused by Defaulting Defendant's wrongful conduct.  The awards of damages are conservative and unlikely to fully compensate Core for the totality of the Defaulting Defendants' patent infringement and false advertising.

19.     The Court also notes that in prior litigation, similarly-situated defendants have resumed infringing sales after the entry of a judgment.  For example, in an earlier case brought by Core, the Honorable Donovan Frank initially awarded Core a permanent injunction against the defendant and its "officers, agents, servants, directors, employees, affiliated entities, and those persons in active concert or participation with any of them." *Core Distrib. Inc. v. Xtreme Power (USA) Inc.*, Civ. No. 15-cv-1547 (DWF/BRT), Dkt. No. 21 at 2.  A mere few months later, Xtreme and its agents returned to selling infringing products, requiring Judge Frank to issue an order to show cause why they should not be held in contempt.  (*See id.* Dkt. No. 34.)  The defendant changed its Amazon storefront name several times over these months in an effort to evade the Court's orders.  (*See id.* Dkt. No. 60 at 3 n.1.)  Judge Frank eventually held numerous parties in contempt and ordered them to pay Core's attorney's fees and costs related to the

contempt motion. Because of the ability of parties to hide their true identities until haled into court, the only substantial deterrent for these parties to refrain from further wrongful acts is a court injunction.

20.     In light of the Defaulting Defendants' flagrant disregard of this proceeding, an injunction is the only way to prevent additional harm to Core. *See Yellow Cab Co. of Orlando, Inc. v. Celebration Transportation*, 2013 WL 656339, at *5 (M.D. Fla. Jan. 28, 2013) ("Defendant's very failure to appear in this action makes it difficult for Plaintiff to prevent further infringement without an injunction."). Thus, this factor strongly favors a permanent injunction against the Defaulting Defendants.

21.     The Court also finds that the balance of hardships also favors an injunction. Core has suffered great harm as a result of the Defaulting Defendants' conduct and will continue to suffer if an injunction is not entered. Core has been barred from exercising its right to exclude conveyed by the '094 patent and has been hampered in its ability to enforce its patent rights by the Defaulting Defendants' failure to appear in this lawsuit. Core has also suffered price erosion due to the availability of the cheaper, Infringing Ladders that are falsely advertised as complying with relevant safety standards. For years, Core has been required to expend significant resources in pursuing parties such as the Defaulting Defendants that sell infringing and dangerous products online.

22.     Conversely, the Defaulting Defendants cannot legitimately claim that they are harmed in any way by the Court prohibiting them from continuing to engage in conduct that violates federal law. *Surdyk's Liquor, Inc. v. MGM Liquor Stores, Inc.*, 83 F. Supp. 2d 1016, 1028 (D. Minn. 2000); *see also Windsurfing Int'l v. AMF, Inc.*, 782

F.2d 995, 1003, n. 12 (Fed. Cir. 1986) ("One who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so elected."). The Defaulting Defendants had the opportunity to defend their actions. They chose to ignore this lawsuit even after default was entered against them. Accordingly, this factor also supports the issuance of an injunction.

23.     Finally, the Court finds that the public interest will be served by an injunction. "[T]he public interest is generally served by the enforcement of patent rights." *Torspo Hockey Intern., Inc. v. Kor Hockey Ltd.*, 491 F. Supp. 2d 871, 882 (D. Minn. 2007). Likewise, "there is no question that the public interest favors enjoining false statements." *Surdyk's*, 83 F. Supp. 2d at 1028 (internal quotations and citation omitted). Clearly, the public is better served by not being misled into purchasing cheap, knockoff ladders that are falsely advertised as being equally as safe as Core's patented product. Purchasers have fallen from significant heights while using the Infringing Ladders and suffered significant injuries. Accordingly, the final factor weighs in favor of an injunction.

24.     Having found that all four factors support the issuance of an injunction in this case, the Court finds it is appropriate to enter a permanent injunction preventing the Defaulting Defendants and their officers, agents, servants, directors, employees, affiliated entities, and those persons in active concert or participation with any of them from: (1) further infringement of the '094 patent; (2) continuing to import, manufacture, use, sell, or offer to sell the Infringing Ladders; and (3) directly or indirectly using in commerce or

disseminating to the marketplace any materials, labels, promotional materials, advertising, or other goods containing any of the false or misleading statements described in Core's Complaint, or any advertising or labeling which communicated similar false or misleading messages.

## IV. DAMAGES

25.     The Patent Act provides that damages for patent infringement shall be "adequate to compensate for the infringement, ***but in no event*** less than a reasonable royalty for the use made of the invention by the infringer."  35 U.S.C. § 284 (emphasis added).  Because the Court has found that the Defaulting Defendants are liable for infringing the '094 patent, a reasonable royalty award is the floor for the damages to which Core is entitled.  *See Rimlinger v. Shenyang 245 Factory*, 2014 WL 2527147, at *4 (D. Nev. Jun. 4, 2014) ("Having already concluded that Plaintiff's allegations make out a case of patent infringement, the Court is obligated to award damages.").

26.     Even though it is Core's duty to prove damages, any doubts regarding the computation of damages must be resolved against Defaulting Defendants due to their default.  *See Keystone Global LLC v. Auto Essentials, Inc.*, 2015 WL 224359 at *5 (S.D.N.Y. Jan. 16, 2015) ("While [plaintiff's] method of calculating damages is hardly precise, the evidence necessary to assess damages with greater precision is lacking because of [defendant's] default and failure to participate in discovery.  Thus, any doubts about plaintiff's damages should be resolved against [defendant]." (internal quotations and citations omitted)); *see also IPVX Patent Holdings, Inc. v. Taridium, LLC*, 2014 WL 4437294, at *3 (E.D.N.Y. Aug. 6, 2014) ("The damages calculation may not be based on

mere speculation or guess, but is sufficient if the evidence shows the extent of the damages as a matter of just and reasonable inference, although the result may only approximate." (internal quotations and citation omitted)).

27.    Core has provided that it would not voluntarily grant any Defaulting Defendant a license.  (*See* Dkt. No. 148 ¶ 16.)  Because the Defaulting Defendants are not playing on a level playing field with respect to insurance and safety compliance and sell knockoff products for just a fraction of the price of Core's genuine products, even applying a very high royalty rate would allow the Defaulting Defendants to continue to undercut Core and erode its prices.  (*Id.*)  Accordingly, the Court finds that a 12% royalty for all sales provides a sufficient minimum floor for damages under the Patent Act based on the limited available discovery and the default proceeding.

28.    The Court also finds that any hypothetical license negotiation would have required transaction costs, which would be paid by the Defaulting Defendants. Specifically, Core would have required each Defaulting Defendant to pay Core's costs related to due diligence, negotiation of the royalty, and negotiation and drafting of any license agreement.  (*Id.* ¶ 17.)  Given that some efficiency would be gained in these efforts because of the same products and claims at issue, Core's conservative estimate that these costs would amount to no less than $50,000, based on the time and efforts of Core personnel, legal fees, and other out-of-pocket costs, is reasonable.  (*See id.*)  As a conservative estimate, the Court apportions the transaction cost among all twelve defendants (*i.e.*, $4,166.67 each) that could have been expected to negotiate such a license.  This Court has previously awarded Core a 12% royalty and $50,000 transaction

cost for very similar claims. *See Core Distrib. Inc. v. Xtreme Power (USA) Inc.*, Civ. No.

15-cv-1547 (DWF/BRT), Dkt. No. 15 at 15; Dkt. No. 21 at 2.

29.     The Court notes that Core's ability to take discovery relating to the

Defaulting Defendants has been limited based on the Defaulting Defendants' failure to

participate in these proceedings.  Accordingly, based on the findings of fact above and all

of the records before the Court as part of Core's motion, the Court finds that Core is

entitled to damages from the Defaulting Defendants as follows:

| Defendant | Damages |
| --- | --- |
| ladderpro | $51,926.90 |
| Honey Blue | $11,489.19 |
| Tools Pro | $10,723.30 |
| Abundant Store | $9,613.31 |
| go2buy | $9,366.04 |
| Easyfashion | $7,008.01 |
| Wow Direct | $6,923.09 |

30.     The Court also finds that such damages represent at least the amount of

damages that each Defaulting Defendant has caused to Core based on the violations of

the Lanham Act and MDTPA.

31.     The Patent Act allows the Court to "increase the damages up to three times

the amount found or assessed." 35 U.S.C. § 284.  Similarly, under the Lanham Act, the

Court "may enter judgment, according to the circumstances of the case, for any sum

above the amount found as actual damages, not exceeding three times such amount." 15

U.S.C. § 1117(a).  Under both statutes, an award of treble damages is appropriate if the

defendant acted willfully. *See, e.g., Keystone*, 2015 WL 224359, at * 6 ("Where [a]

patent infringement is willful, intentional, and deliberate, an award of enhanced damages

is proper." (internal quotations and citation omitted)); *Gutter Topper Ltd. v. Sigman & Sigman Gutters, Inc.*, 2014 WL 6473407, at *3 (S.D. Ohio Nov. 18, 2014) ("Courts have interpreted [15 U.S.C. § 1117(a)] to allow for enhanced damages where the defendant's conduct was willful.").

32.     Because default has been entered against the Defaulting Defendants, they are deemed to have admitted that they willfully infringed the '094 patent and engaged in willful false advertising.  (*See* Dkt. No. 1 ¶¶ 86, 93, 96); *J. Blazek*, 2007 WL 4191715 at *2 ("Therefore, by defaulting, Euro Expo admits that it has willfully infringed the Blazek Patents.").  In addition, the Defaulting Defendants at least had constructive knowledge of the '094 patent because Core marks its products.  *See* 35 U.S.C. § 287(a).  Furthermore, Core has enforced the '094 patent through numerous legal proceedings in federal court and through Amazon's infringement reporting functionality and infringing parties often correspond with one another when selling similar products.  (*See* Dkt. No. 148 ¶ 10.)

33.     The Defaulting Defendants' refusal to participate in this proceeding further demonstrates that their actions have been willful and in bad faith.  Their willfulness justifies an award of treble damages under both the Patent Act and the Lanham Act.  *See, e.g., J Blazek*, 2007 WL 4191715, at *2 (awarding enhanced damages against a defaulting defendant in a patent infringement case); *Keystone*, 2015 WL 224359, at *6 (explaining that courts applying the treble damages provision under 15 U.S.C. § 1117 have found that "willfulness may be established by a party's default because an innocent party would presumably have made an effort to defend itself" (internal quotations and citation omitted)).

34.     Furthermore, based on the numerous Amazon product reviews, the Defaulting Defendants would have known that the ladders they sold did not meet the advertised safety ratings.  In the absence of any evidence that the Defaulting Defendants took any investigative or corrective action, the Court finds their continued sales under the circumstances to be willful.

35.     Accordingly, the Court finds it is appropriate to treble damages and award Core the following amounts in damages for each Defaulting Defendant's willful patent infringement and false advertising:

| Defendant | Base Damages | Total Damages |
|---|---|---|
| ladderpro | $51,926.90 | $155,780.70 |
| Honey Blue | $11,489.19 | $34,467.57 |
| Tools Pro | $10,723.30 | $32,169.90 |
| Abundant Store | $9,613.31 | $28,839.93 |
| go2buy | $9,366.04 | $28,098.12 |
| Easyfashion | $7,008.01 | $21,024.03 |
| Wow Direct | $6,923.09 | $20,769.27 |

## V.    ATTORNEYS' FEES

36.     The Patent Act provides that courts "in exceptional cases may award reasonable attorney fees to the prevailing party."  35 U.S.C. § 285.  This case is exceptional for at least two reasons.  First, by defaulting, the Defaulting Defendants are deemed to have admitted that their infringement of the '094 patent is willful.  *See, e.g., J. Blazek*, 2007 WL 4191715, at *2 ("Therefore, by defaulting, Euro Expo admits that it has willfully infringed the Blazek Patents.").  A willfulness finding is sufficient to support an award of attorneys' fees to Core.  *See, e.g., Core Distrib. Inc. v. Xtreme Power (USA) Inc.*, Civ. No. 15-cv-1547 (DWF/BRT), Dkt. No. 21 at 1; *see also Cevia Logic Inc. v. Frame Media Inc.*, 2014 WL 7338840, at *4 (C.D. Cal. Dec. 19, 2014) ("In the context of

default, a pleading that infringement was willful is sufficient to establish[] entitlement to attorneys' fees.").

37.     The Lanham Act also allows the prevailing party to recover reasonable attorneys' fees in exceptional cases. *See* 15 U.S.C. § 1117(a). Courts regularly award attorneys' fees in cases such as this where a defaulting defendant is deemed to have engaged in willful violations of the Lanham Act. *See, e.g., Yellow Cab*, 2013 WL 656339, at *6 (finding case exceptional and awarding attorneys' fees because "Defendant's failure to appear in this action is evidence that it has acted deliberately and willfully"); *Am. Taxi Dispatch, Inc. v. Am. Metro Taxi & Limo Co.*, 582 F. Supp. 2d 999, 1008 (N.D. Ill. 2008) (awarding attorneys' fees based on default judgment, finding that allegations of willfulness supported finding that case was exceptional for purposes of § 1117(a)).

38.     Likewise, the MDTPA permits the Court to award attorneys' fees to the prevailing party if "the party charged with a deceptive trade practice has willfully engaged in the trade practice knowing it to be deceptive." Minn. Stat. § 325D.45, subd. 2.[2] As set forth above, the Defaulting Defendants' default is deemed to constitute a concession of all pleaded allegations of liability. Therefore, they are deemed to have conceded that they willfully engaged in a deceptive trade practice in bad faith. (*See* Dkt. No. 1 ¶¶ 95, 96.) Accordingly, Core is entitled to recover its attorneys' fees under the MDTPA.

---

[2]     The MDTPA's attorneys' fees provision is not preempted by the Lanham Act. *See Tonka Corp. v. Tonka-A-Phone, Inc.*, 805 F.2d 793, 795 (8th Cir. 1986).

39. The Defaulting Defendants have ignored this proceeding and Core's efforts to protect its intellectual property. Despite receiving notice of the suit and filings in this case—including this motion—the Defaulting Defendants have not appeared in the action. Such intentional disregard for the judicial process further supports a finding that this case is exceptional, and that Core is entitled to its attorneys' fees in pursuing these claims against the remaining Defaulting Defendants. Core resolved its claims through mutual agreement and consented judgment or voluntary dismissal against numerous defendants. (*See* Dkt. Nos. 104, 121, and 125.) The need to incur the attorneys' fees Core requests as part of this motion are a direct result of the Defaulting Defendants' refusal to accept responsibility for their wrongful actions. The expense of such avoidable efforts are to be borne by the responsible parties—the Defaulting Defendants.

40. The Court finds that Core has incurred significant attorneys' fees in bringing this action, pursuing its patent rights, and protecting the public from false advertisements and dangerous knockoff products. Accordingly, Core is entitled to recover its reasonable attorneys' fees from the Defaulting Defendants. (*See* Compl. ¶¶ 94, 97, pp. 24-25.) Upon reviewing Core's supporting declaration for attorneys' fees it has incurred in this litigation with respect to the Defaulting Defendants, (*see* Dkt. No. 161), the Court awards Core $66,621.00 in attorneys' fees, equally apportioned to each Defaulting Defendant ($9,517.29), which it finds to be reasonable and appropriate under the circumstances. *See, e.g.*, *Madison v. Willis*, No. 09–cv–930 (DWF/AJB), 2011 WL 851479, at *1 (D. Minn. Mar. 9, 2011) (noting that rates charged for attorney time in this district between $180 and $600 per hour have been deemed reasonable).

## VI.  COSTS

41.    Rule 54(d)(1) of the Federal Rules of Civil Procedure provides that the
prevailing party should be allowed to recover its costs.  The Patent Act also authorizes
the award of "costs as fixed by the court."  35 U.S.C. § 284.   In addition, the Lanham
Act provides that "the plaintiff shall be entitled . . . to recover . . . the costs of the action,"
and the MDTPA states that "[c]osts shall be allowed to the prevailing party . . . ."  15
U.S.C. §1117(a); Minn. Stat. § 325D.45, subd. 2.  Under any of these provisions, Core is
entitled to recover its costs.  Upon reviewing Core's submission for the amount of costs it
has incurred in this litigation with respect to the Defaulting Defendants, (*see* Dkt. No.
161), the Court awards Core $1,638.51 in costs, equally apportioned to each Defaulting
Defendant ($234.07), which it finds to be reasonable and appropriate under the
circumstances:

| Defendant | Base Damages | Total Damages | Total with Fees and Costs |
|---|---|---|---|
| ladderpro | $51,926.90 | $155,780.70 | $165,532.06 |
| Honey Blue | $11,489.19 | $34,467.57 | $44,218.93 |
| Tools Pro | $10,723.30 | $32,169.90 | $41,921.26 |
| Abundant Store | $9,613.31 | $28,839.93 | $38,591.29 |
| go2buy | $9,366.04 | $28,098.12 | $37,849.48 |
| Easyfashion | $7,008.01 | $21,024.03 | $30,775.39 |
| Wow Direct | $6,923.09 | $20,769.27 | $30,520.63 |

## VII.  PREJUDGMENT INTEREST

42.    "The Supreme Court has held that prejudgment interest should be awarded
in patent infringement cases absent some justification for withholding such an award."
*IPVX Patent Holdings¸* 2014 WL 4437294, at *4 (internal quotations and citation
omitted).  This Court has awarded prejudgment interest at the Minnesota statutory rate on

damages awards in patent cases. *See, e.g., August Tech. Corp. v. Camtek, Ltd.*, No. 05–1396 (JRT/FLN), 2015 WL 520546, at *7-8 (D. Minn. Feb. 9, 2015) (awarding prejudgment interest at the rate provided in Minn. Stat. § 549.09, subd. 1). Indeed, the Court has awarded prejudgment interest for very similar claims previously brought by Core. *See Core Distrib. Inc. v. Xtreme Power (USA) Inc.*, Civ. No. 15-cv-1547 (DWF/BRT), Dkt. No. 21 at 2. "As a general rule, prejudgment interest should be awarded from the date of infringement to the date of judgment." *August Tech.*, 2015 WL 520546, at *8, n.4.

43.     For amounts greater than $50,000, the prejudgment interest is at a rate of 10% per year. *See* Minn. Stat. § 549.09, subd. 1(a).

44.     Accordingly, the Court awards prejudgment interest against each Defaulting Defendant from the date each Defaulting Defendant's infringement began until judgment is entered, at the rate of 10% annually. The Court finds that the Defaulting Defendants have infringed the '094 patent at least as of the following dates and prejudgment interest should be awarded at the following rate per day of infringement and total prejudgment interest against each Defaulting Defendant:

| Defendant | Judgment | Date | # of Days | Daily Prejudgment Interest | Total Prejudgment Interest |
|---|---|---|---|---|---|
| ladderpro | 11/27/20188 | 3/3/2016 | 999 | $45.35 | $45,305.90 |
| Honey Blue | 11/27/20188 | 1/24/2013 | 2133 | $12.11 | $25,840.82 |
| Tools Pro | 11/27/20188 | 1/6/2012 | 2517 | $11.49 | $28,908.44 |
| Abundant | 11/27/20188 | 11/26/2015 | 1097 | $10.57 | $11,598.53 |
| go2buy | 11/27/20188 | 9/9/2015 | 1175 | $10.37 | $12,184.42 |
| Easyfashion | 11/27/20188 | 10/2/2014 | 1517 | $8.43 | $12,790.76 |
| Wow Direct | 11/27/20188 | 9/21/2015 | 1163 | $8.36 | $9,724.79 |

**IT IS HEREBY ORDERED THAT**:

1.      Core's Motion for Default Judgment [Doc. No. 145]is **GRANTED**.

2.      Defendants JOHN DOE 3, d/b/a ladderpro under Seller ID 40454813405 on Amazon.com ("ladderpro"); JOHN DOE 4, d/b/a Honey-Blue Super Outlet under Seller ID 1779413921 on Amazon.com ("Honey-Blue"); JOHN DOE 6, d/b/a toolspro1 under Seller ID 1956866391 on Amazon.com ("toolspro1"); JOHN DOE 7, d/b/a Abundant Store under Seller ID 20571230605 on Amazon.com ("Abundant Store"); JOHN DOE 8, d/b/a go2buy under Seller ID 14512726805 on Amazon.com ("go2buy"); JOHN DOE 11, d/b/a Easyfashion under Seller ID 7164409515 on Amazon.com ("Easyfashion"); and JOHN DOE 12, d/b/a Wow Direct under Seller ID 19755247805 on Amazon.com ("Wow Direct"), (collectively the "Defaulting Defendants") are liable for willful patent infringement, false advertising, and deceptive trade practices.

3.      The Defaulting Defendants shall preserve all records (including electronically stored information) and other documents concerning all transactions relating to their acquisition, import, purchase, or sale of any telescoping ladders and that all such materials be made available to Core for review, inspection, and copying upon Core's request.

4.      The Defaulting Defendants shall provide to Core, upon Core's request, the names, addresses, and all other contact information in their possession for the source of all telescoping ladders purchased by each Defaulting Defendant.

5.     The Defaulting Defendants and their officers, agents, servants, directors, employees, affiliated entities, and those persons in active concert or participation with any of them are **PERMANENTLY ENJOINED** from:

- Further infringement of U.S. Patent No. 7,048,094 (the '094 patent);
- Continuing to import, manufacture, use, sell, or offer to sell any of the telescoping ladders identified in Core's Complaint, including those listed at Docket No. 1-2, and any other ladders that infringe the '094 patent;
- Directly or indirectly using in commerce or disseminating to the marketplace any materials, labels, promotional materials, advertising, or other goods containing any of the false or misleading statements described in Core's Complaint, or any advertising or labeling which communicate similar false or misleading messages.

6.     Defaulting Defendants shall pay Core the following damages:

| Defendant | Total Damages |
| --- | --- |
| ladderpro | $155,780.70 |
| Honey Blue | $34,467.57 |
| toolspro1 | $32,169.90 |
| Abundant Store | $28,839.93 |
| go2buy | $28,098.12 |
| Easyfashion | $21,024.03 |
| Wow Direct | $20,769.27 |

7.     Each Defaulting Defendant shall pay Core attorneys' fees and costs incurred in this action as follows:

| Defendant | Fees and Costs |
|---|---|
| ladderpro | $9,751.36 |
| Honey Blue | $9,751.36 |
| toolspro1 | $9,751.36 |
| Abundant Store | $9,751.36 |
| go2buy | $9,751.36 |
| Easyfashion | $9,751.36 |
| Wow Direct | $9,751.36 |

8.      Core is entitled to recover prejudgment interest from each Defaulting

Defendant at the Minnesota statutory rate from the following dates until final judgment is

entered.

| Defendant | Date | Total Damages, Fees, and Costs | Prejudgment Interest | Judgment Amount |
|---|---|---|---|---|
| ladderpro | 3/3/2016 | $165,532.06 | $45,305.90 | $210,837.96 |
| Honey Blue | 1/24/2013 | $44,218.93 | $25,840.82 | $70,059.75 |
| toolspro1 | 1/6/2012 | $41,921.26 | $28,908.44 | $70,829.70 |
| Abundant | 11/26/2015 | $38,591.29 | $11,598.53 | $50,189.82 |
| go2buy | 9/9/2015 | $37,849.48 | $12,184.42 | $50,033.90 |
| Easyfashion | 10/2/2014 | $30,775.39 | $12,790.76 | $43,566.15 |
| Wow Direct | 9/21/2015 | $30,520.63 | $9,724.79 | $40,245.42 |

9.      Based on the above, monetary judgments shall be entered against each

Defaulting Defendant as follows:

a)  In the amount of $210,837.96 against JOHN DOE 3, d/b/a

ladderpro under Seller ID 40454813405 on Amazon.com

("ladderpro");

b)  In the amount of $70,059.75 against JOHN DOE 4, d/b/a Honey-

Blue Super Outlet under Seller ID 1779413921 on Amazon.com

("Honey-Blue");

c) In the amount of $70,829.70 against JOHN DOE 6, d/b/a toolspro1 under Seller ID 1956866391 on Amazon.com ("toolspro1");

d) In the amount of $50,189.82 against JOHN DOE 7, d/b/a Abundant Store under Seller ID 20571230605 on Amazon.com ("Abundant Store");

e) In the amount of $50,033.90 against JOHN DOE 8, d/b/a go2buy under Seller ID 14512726805 on Amazon.com ("go2buy");

f) In the amount of $43,566.15 against JOHN DOE 11, d/b/a Easyfashion under Seller ID 7164409515 on Amazon.com ("Easyfashion"); and

g) In the amount of $40,245.42 against JOHN DOE 12, d/b/a Wow Direct under Seller ID 19755247805 on Amazon.com ("Wow Direct").

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:

DATE: November 27, 2018

s/Susan Richard Nelson
Susan Richard Nelson
United States District Court Judge